## BENDETSON *vs*. FRENCH.

Under the act of 1855 which provides that whenever the proprietor of a hotel shall provide a safe for the safe keeping of money, jewels and ornaments, and shall post a notice thereof, conspicuously in the rooms of the hotel, if a guest " shall neglect to deposit such money, jewels or ornaments in such safe, the proprietor of such hotel shall not be liable for any loss of such money, &c. sustained by such guest by theft or otherwise," the hotel keeper who has posted such a notice is liable for losses occurring only when he has the actual possession and custody of the articles by their being placed in a safe provided.

Whilst they are out of the safe, they are to be regarded as within the personal care and custody of the guest, and not of the hotel keeper, and the latter, during that time, is relieved from responsibility.

Where the plaintiff, a guest in a hotel, offered a package of jewelry to the book keeper, requesting him to put it in the safe, but making no statement of the contents, and the book keeper made no inquiry, but told the plaintiff there was no necessity for putting the package in the safe; to take it to his room ; that it would be just as safe there ; whereupon the plaintiff took the package to his room and placed it in his trunk, where it was stolen ; *Held* that the keeper of the hotel was not liable, by reason of the omission of the plaintiff to disclose the contents of the package, to the clerk.

THIS action was brought to recover the value of a quantity of jewelry, watches, gold and silver bullion, &c. taken from the plaintiff while a guest at the defendant's hotel, in the city of New York.

The answer of the defendant, 1st. Admits that he is the proprietor of French's Hotel, but alleges substantially that such place is not, in fact, a hotel, and the keeper thereof is not liable as such, and denies the complaint in other respects. 2d. Denies that the plaintiff brought the property alleged to have been lost into, the hotel, or placed them in the defendant's custody. 3d. Alleges the providing of a safe and notice to guests, under the statute. 4th. That the property lost was no part of the plaintiff's baggage as a traveler. That the plaintiff did not disclose to the defendant or his servants, that he had brought to French's Hotel said jewelry, &c. but fraudulently concealed the same ; and 5th. That the loss (if any) arose from the carelessness and negligence of the plaintiff.

The issue thus formed was, by order of the court, duly referred to the Hon. Philo T. Ruggles, to hear, try and determine. The referee found the following facts :

1st. That during the month of October, 1861, the defendant was an innkeeper, and proprietor of a hotel in the city of New York, called French's Hotel.

2d. That on the 4th day of October, 1861, the plaintiff became a guest of the defendant at said hotel, and occupied room No. 90, in said hotel, and the plaintiff remained such guest of the defendant to and including October 8, 1861.

3d. That the plaintiff arrived in the city of New York, from Rio Janeiro, on the 4th day of October, 1861, by ship P. C. Warwick, and that before leaving said ship, in the harbor of New York, a package containing a jewelry box, with jewelry therein, and watches and other jewelry on the top of said box, all wrapped in an oil cloth, and tied up with a strong cord — the property of the plaintiff — was delivered to a custom house officer, to be taken to the custom house for appraisal, to collect and receive the proper duty chargeable thereon.

4th. That the plaintiff retained in his own possession, which did not go into said package, one gold watch, chain, seal, and charms, two sets of brilliants, and one gentleman's pin, two bars of silver, one bar of gold, and about $25 in Brazilian silver coins ; also other gold and paper money.

5th. That on the 7th day of October, 1861, the plaintiff called at the custom house to pay the duty on said package, and to receive the same, and found the appraiser in the act of appraising said property, but the same was not completed, and said appraiser stated to the plaintiff, that he had great difficulty in getting at the valuations, and asked plaintiff if he was willing to pay duty upon the estimated value of $500 for the whole lot, to which plaintiff assented, and thereupon the goods were passed over to the plaintiff, who put them up and repacked them in said package. That thereupon the record of such appraisal was altered to conform to said sum

of $500. That exhibit A A is a fair copy of said original record, but the original record is considerably erased and altered, both in the number of articles as first entered, and in the amount of valuations as extended, and that such alterations were made before said duties were paid, and the box delivered.

6th. That on the said 7th day of October, 1861, the said plaintiff received said property and paid the duty on said valuation of $500, and then returned to said French's Hotel with said package, where he met one Louis Rosenthal and his wife, relatives of said plaintiff, who went with plaintiff to his said room, No. 90, and thence plaintiff, said Rosenthal and wife went to the dwelling house of said Rosenthal, at No. 243 Bowery, New York, and plaintiff took with him said package, as received from the custom house, said sets of brilliants and pin, gold and silver bars, and Brazilian coins, and the watch, chain, &c. which he had on his person, and said gold and paper money.

7th. That on the morning of October 8th, 1861, said plaintiff made up a package, consisting of said jewelry box, and all the jewelry which plaintiff took from the custom house, the said gold and silver bars and Brazilian coins, the two sets of brilliants and pin, and the watch, chain, seals and charms, which the plaintiff had on his person, and wrapped the whole in said oil cloth, and tied up the same with a strong cord, and altogether they formed a package 16 inches long, 10 inches wide, and about 7 inches high.

8th. That the plaintiff, in the morning of the said 8th day of October, 1861, left the house of said Rosenthal and went to said French's Hotel with said package, and arrived there about 10 o'clock on the morning of the 8th of October, 1861 ; and thereupon, the plaintiff presented the said package to the book keeper of the defendant, at the office of the said hotel, and requested said book keeper to put said package in the safe, (there being a safe in said office, in which to deposit valuables) ; and that said book keeper then told plaintiff

there was no necessity for that—to take said package to his, plaintiff's room, saying, it would be just as safe there; and that, thereupon, the plaintiff did take said package to his said room, No. 90, and put the same into his trunk in said room; and plaintiff then locked his trunk and also his said room, and delivered the key of said room to said book keeper; and thereupon, left the hotel, temporarily, to attend to some business in the city.

9th. That when said plaintiff offered said package to said book keeper, and requested him to put it in the safe, the said book keeper made no inquiry of the plaintiff as to the contents of said package; and the plaintiff made no statement of the contents thereof to said book keeper.

10th. That at the time plaintiff arrived in New York, he had a family consisting of a wife and one daughter, residing at Syracuse, in this state, from whom he had been absent about four years, and plaintiff designed to leave the city of New York for Syracuse on the said 8th day of October, 1861; and said plaintiff returned to said hotel about one o'clock on the afternoon of said 8th day of October, 1861, took the key of said room No. 90 from the book keeper of the defendant at the office of said hotel, and went to said room for the purpose of packing his clothes and property in his trunk, in said room No. 90, preparatory to his departure from said hotel; and that plaintiff completed the packing of his said trunk about one o'clock of the afternoon of said 8th day of October, 1861; and locked his said trunk containing the aforesaid package, as previously deposited therein, and plaintiff's clothing. That plaintiff then locked the door of said room No. 90, and delivered the key of said room to said book keeper; and at the office of said hotel, and at the same time, notified said book keeper that he was going to leave said hotel for Syracuse, by the first train, and requested said book keeper to have his, plaintiff's trunk, brought down immediately; to make out his, plaintiff's account, and that he, plaintiff, would return in a few minutes and pay said account, and thereupon plain-

tiff went down stairs into the saloon, under said hotel, for refreshments; and, in a few minutes returned and paid his account to said book keeper, and inquired if his trunk had been brought down, and ascertained it had not; and the plaintiff thereupon again requested it to be brought down. That thereupon, a porter was called by the book keeper, to whom he delivered the key to said room No. 90, and directed said porter to bring down plaintiff's trunk from said room: that said porter, accompanied by plaintiff, went up to said room No. 90; the porter unlocked the door, when it was discovered that said room had been entered, plaintiff's trunk broken open, the said package taken out and broken open, and most of the jewelry, the said sets of brilliants and pin, and the gold and silver bars, and Brazilian coin, and gold and silver watches had been stolen and carried away.

11th. That between one and two o'clock of said 8th day of October, 1861, and after the plaintiff had delivered the key to said room No. 90 to defendant's book keeper, at the office of said hotel, as aforesaid, and notified said book keeper of his (plaintiff's) intention to leave, and had ordered said book keeper to have said trunk brought down, the room No. 90 was entered, said plaintiff's trunk broken open, and also the said package of jewelry and other property in that trunk; and the said jewelry, watches, sets of brilliants, pin, gold and silver bars, and Brazilian coins, were stolen from said package, amounting in value at that time, to the sum of $1856.

12th. That the first train of cars which left New York for Albany and Syracuse, left New York on said 8th day of October, 1861, at four o'clock in the afternoon of that day.

13th. That the defendant kept a safe in the office of said hotel, in which guests might deposit valuables, and that plaintiff knew the fact that such safe was kept, and that valuables were and might be deposited therein, and that plaintiff knew that fact on the 5th day of October, 1861.

14th. That the defendant had rules and regulations for said hotel, and at the foot of such rules and regulations, a

notice, which rules and regulations, and notice,(*a*) were printed, and were framed in small portable frames, 12 by 15 inches, and in that form were hung up in the rooms of said hotel, and the same hung up in room No. 90, while plaintiff was a guest there as aforesaid, in a conspicuous place in said room; that such frames could be taken down and hung up at pleasure by any person.

15th. That the plaintiff was not guilty of any carelessness or negligence which contributed to the robbery or loss, either with respect to Herman Bleirhode, the occupant of room No. 91, or others.

16th. As a conclusion of law, founded upon the foregoing facts as found, the referee found and decided that the plaintiff was entitled to judgment in this action against the defendant, for the sum of $2112.65, besides his costs, and that judgment should be entered accordingly.

To which conclusions of fact and of law, the defendant excepted, as follows:

1st. That on the 8th day of October, 1861, the above named plaintiff took to the hotel of the above named defendant, in the city of New York, known as French's Hotel, a box containing goods, chattels, jewelry, watches, &c. and then became a guest at said hotel.

2d. That while as a guest at said hotel, the said box was broken open and the contents stolen, except a small portion.

3d. That the said plaintiff suffered damage thereby to the amount of $1856, which, together with interest to the date of said report, amounts to the sum of $2112.65; and to each and every part thereof.

(*a*) The notice was as follows:

"Guests are respectfully notified that a safe has been provided, and is kept in the office of this hotel, for the safe keeping of any money, jewels or ornaments belonging to them; that such money, jewels and ornaments may be deposited in said safe, and that, unless so deposited, the proprietor will not be responsible for their loss. The safe has been provided, and is kept, and this notice is given, under and pursuant to the law.

New York, December, 1856.                R. FRENCH, Proprietor."

The defendant excepted to the referee's conclusions of law, as follows :

1st. That the said plaintiff is entitled to recover in the action against the said defendant, the sum of $2112.65, together with the costs, and that judgment should be given accordingly.

Judgment being entered upon the referee's report, the defendant appealed.

*Samuel E. Lyon,* for the appellant.

*H. Sheldon,* for the respondent.

GEO. G. BARNARD, J.   The act of 1855 provides that whenever the proprietor of a hotel shall provide a safe for the safe keeping of money, jewels and ornaments, and shall post a notice thereof, conspicuously in the rooms of the hotel, "if such guest shall neglect to deposit such money, jewels or ornaments in such safe, the proprietor of such hotel shall not be liable for any loss of such money, jewels or ornaments sustained by such guest, by theft or otherwise."

The object of this act was to relieve the hotel keeper from the former liability founded upon his presumed possession and control over the property of his guest, by reason of the same being within his house, and under the care and supervision of himself, his servants and agents.   The statute must be construed so as to carry out this object.   The only construction that can be put on it to effect this, is, that the hotel keeper is liable for losses occurring only when he has the actual possession and custody of the articles, by their being placed in a safe provided.

Whilst they are out of the safe they are to be regarded as within the personal care and custody of the guest, and not of the hotel keeper, and the hotel keeper, during that time, is relieved from responsibility.

This view of the statute disposes of all the questions arising on this appeal, except the one growing out of the interview between the plaintiff and defendant's clerk.

This interview can be available to the plaintiff, only on the ground that by it he was deprived of the security of the safe, and that, therefore, the case is to be considered as if no safe had been provided.

To have this effect, knowledge of the contents of the package should be brought home to the clerk. The plaintiff urges that he had reasonable notice of the contents, by its being offered for deposit. Whether that was reasonable notice or not, depends on all the surrounding circumstances. Under the facts of this case, I think it was not. Here the plaintiff offers a large package, done up in a rough style, not indicating in any manner that it contained jewelry, but, on the contrary, leading to the supposition that it was an ordinary package, which the plaintiff, to prevent the necessity of going up stairs, desired to have temporarily placed in the safe. It was calculated to mislead, and that it did mislead, and that the plaintiff knew it misled the clerk, I think is apparent from the whole evidence. As the clerk had previously deposited an opera glass in the safe, at the plaintiff's request, his statement, that this package would be just as secure in the room as in the safe, was enough to show the plaintiff that the clerk was unaware of the valuable contents of said package, and supposed it not to be of a character which should require the protection of a safe. The plaintiff knew the value of the package, and also knew that the clerk did not, and the evidence warrants the conclusion that the plaintiff knew that if he had disclosed the value to the clerk, such clerk would have deposited it in the safe, and that for some purpose of his own he concealed the value purposely and knowingly, leaving the clerk under a false impression.

The judgment should be reversed, and a new trial ordered at the circuit, costs to abide the event.

INGRAHAM, P. J.　I do not deem it necessary in this case to decide whether the defendant might not be liable for jewelry, &c. after the same has been packed, prior to his departure from the hotel.　I concur with Justice Barnard in reversing the judgment, upon the ground that the plaintiff did not disclose the contents of the package, and was not excused by the remark of the clerk from putting the same in the chest of the landlord.

CLERKE, J. also concurred.

Judgment reversed.